# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

### Frankfort Division

JOHN ROSEMOND,

     Plaintiff,

v.

JACK CONWAY, in his official capacity as
Attorney General of the State of Kentucky; EVA
MARKHAM, ED.D., in her official capacity as
Chair of the Kentucky Board of Examiners of
Psychology; OWEN T. NICHOLS, PSY.D., in his
official capacity as Vice Chair of the Kentucky
Board of Examiners of Psychology; THOMAS W.
MILLER, PH.D., MELISSA F. HALL, M.S., SALLY L.
BRENZEL, PSY.D., WILLIAM G. ELDER, JR., PH.D.,
STANLEY A. BITTMAN, PH.D., and PAULA
GLASFORD in their official capacities as members
of the Kentucky Board of Examiners of
Psychology,

     Defendants.

Civil Action No.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

## INTRODUCTION

1.     This is a First Amendment challenge to Kentucky's censorship of a popular, widely syndicated newspaper column. Plaintiff John Rosemond is a North Carolina-licensed psychologist, the author of multiple bestselling books on parenting, and the author of an advice column on parenting that runs weekly in more than 200 newspapers across the country. On May 7, 2013, Defendant Kentucky Attorney General and Defendant members of the Kentucky Board of Examiners of Psychology ordered Plaintiff Rosemond to cease publishing his advice column

1

in Kentucky on the premise that one-on-one advice about parenting is the practice of psychology and is therefore reserved exclusively for Kentucky-licensed psychologists. Defendants also ordered Plaintiff Rosemond not to refer to himself as a psychologist in the tagline of his newspaper column because, again, he is not a *Kentucky-licensed* psychologist. Defendants' actions are unconstitutional because the First Amendment does not allow the government to censor newspaper opinion columns on the basis of their content. Nor does the First Amendment allow the government to prohibit anyone from making a truthful statement such as "John Rosemond is a family psychologist."

## JURISDICTION AND VENUE

2.      Plaintiff Rosemond brings this civil-rights lawsuit pursuant to the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

3.      Plaintiff Rosemond seeks declaratory and injunctive relief against the enforcement of sections 319.005 *et seq.* of the Kentucky Revised Statutes ("Psychology Practice Act"), regulations promulgated pursuant to the Psychology Practice Act, 201 KAR §§ 26:115 *et seq.*, and against the practices and policies of the Kentucky Board of Examiners of Psychology ("Psychology Board") that: (1) deny his First Amendment right to communicate his opinions, including opinions in the form of one-on-one advice, in his nationally syndicated newspaper column or other writings such as his books, without becoming a Kentucky-licensed psychologist; and (2) deny his right to refer to himself truthfully as a psychologist without becoming a Kentucky-licensed psychologist.

4.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

5.      Venue lies in this Court under 28 U.S.C. § 1391(b).

## PARTIES

6.      Plaintiff John Rosemond is a United States citizen. He resides in Gastonia, Gaston County, North Carolina.

7.      Defendant Jack Conway is the Attorney General of Kentucky and is sued in his official capacity. The office of the Attorney General is located in Frankfort, Franklin County, Kentucky.

8.      Defendants Eva Markham, Ed.D., Owen T. Nichols, Psy.D., Thomas W. Miller, Ph.D., Melissa F. Hall, M.S., Sally L. Brenzel, Psy.D., William G. Elder, Jr., Ph.D., Stanley A. Bittman, Ph.D., and Paula Glasford are members of the Kentucky Board of Examiners of Psychology and are also sued in their official capacities. The office of the Board is located in Frankfort, Franklin County, Kentucky.

## FACTUAL ALLEGATIONS

### Family Psychologist John Rosemond

9.      Plaintiff Rosemond is a 65-year-old family psychologist who lives in North Carolina.

10.      Plaintiff Rosemond has a Master's degree in psychology. He is a licensed "psychological associate" in North Carolina under N.C. Gen. Stat. section 90-270.2(7) & 270.11(b). As a licensed psychological associate, he is authorized under North Carolina law to call himself a "psychologist." N.C. Gen. Stat. § 90-270.2(9).

11.      Plaintiff Rosemond is not licensed to practice psychology in any state other than North Carolina.

12.      Plaintiff Rosemond's particular area of professional interest is effective parenting.

13.     Plaintiff Rosemond does not subscribe to any particular "school" of psychological thought such as psychoanalysis or cognitive psychology, and his advice columns (as well as his books, speaking engagements, and seminars) do not reflect any academic methodology for addressing the parenting issues of those who write to him for advice. He advocates what he considers a "commonsense" approach to parenting, and believes that children do best when their parents provide clear rules and boundaries.

14.     Plaintiff Rosemond is the author of over a dozen books on parenting, five of which are bestsellers. His bestsellers are *Parenting by the Book*; *The Six-Point Plan for Raising Happy, Healthy Children*; *Making the Terrible Twos Terrific!*; *Teen Proofing*; and *Because I Said So*. His books have sold over one million copies.

15.     Plaintiff Rosemond's books, and the advertising for those books, truthfully describe him as a "psychologist." For example, the description of Plaintiff Rosemond's book *Teen Proofing* on Amazon.com describes him as "a renowned child psychologist who has helped millions of parents learn to raise their children and remain sane."

16.     Plaintiff Rosemond's books are readily available in Kentucky, both via the Internet and through traditional brick-and-mortar book stores.

17.     Plaintiff Rosemond has appeared on many television programs, including *20/20*, *The View*, *Politically Incorrect*, *Fox & Friends*, and *The O'Reilly Factor*. These television appearances are broadcast in Kentucky like any other national broadcast.

18.     In his television appearances, Plaintiff Rosemond is truthfully described as a "psychologist."

**Plaintiff Rosemond's Syndicated Advice Column**

19.     In addition to the professional activities discussed above, since 1976, Plaintiff Rosemond has written a newspaper column on parenting.

20.     Plaintiff Rosemond's column is the longest-running syndicated column in the United States written by a single author.

21.     The tagline of Plaintiff Rosemond's column truthfully describes him as a "psychologist." *See, e.g.*, John Rosemond, *Living with Children* (Feb. 2013) (attached as Ex. B).

22.     Plaintiff Rosemond's column now appears on a roughly weekly basis in over 200 newspapers across the country through the McClatchey-Tribune syndicate, including newspapers such as the *Atlanta Journal Constitution*, the *Charlotte Observer*, and the *Pittsburgh Tribune*. Through syndication, Plaintiff Rosemond's column regularly appears in newspapers across Kentucky, including the *Lexington Herald-Leader*, the *Paducah Sun*, and the *Danville Advocate-Messenger*.

23.     Plaintiff Rosemond's column has run in Kentucky newspapers on a regular basis for many years. He expects his column to continue running in Kentucky on a regular basis for the indefinite future.

24.     Thousands of people in Kentucky regularly read Plaintiff Rosemond's parenting column.

25.     In about half of his columns, Plaintiff Rosemond answers specific questions from parents about their own children.

26.     The questions that Plaintiff Rosemond answers in his column are from actual parents, and those questions are about the problems those parents are actually having with their children. Plaintiff Rosemond does not fabricate questions.

27.     The format of these advice-style columns is the same as the familiar Dear Abby column or any of the many other advice columns that run on many topics in newspapers across the country. Plaintiff Rosemond publishes a question from a parent, which is edited only for clarity and length, and provides a response that is individually tailored to the predicament described in the question.

28.     When he writes his column in the Dear Abby-style format and answers a specific reader's question about his or her circumstances, Plaintiff Rosemond has two purposes. First, he intends to provide useful advice to the specific questioner in a manner that is tailored to the individual circumstances of that questioner's life. Second, Plaintiff Rosemond intends to use his answer to that specific question as an opportunity to educate and entertain the thousands of people who read his advice column.

29.     In the early days of his column, Plaintiff Rosemond used questions that parents asked him in parenting seminars that he conducted, and continues to conduct, around the country.

30.     Now, Plaintiff Rosemond uses questions in his newspaper column that parents submit via his website, www.rosemond.com, in addition to questions parents ask him at parenting seminars.

31.     Plaintiff Rosemond does not select questions to use in his advice column at random. He selects questions that present common problems so that his specific answers to those questions have general value to the thousands of people who read his column for educational and entertainment purposes.

32.     Plaintiff Rosemond is paid by the McClatchey-Tribune syndicate to write his column. Plaintiff Rosemond does not charge the people whose questions he answers in his

advice column for the advice that he dispenses via the column. Plaintiff Rosemond is not paid by any individual papers that carry his column, with the exception of the Idaho-based "Signs of the Times" magazine, in which his column has appeared for approximately 20 years, and one parenting paper in Alabama. Plaintiff Rosemond self-distributes to both of those publications.

33.     Plaintiff Rosemond does not know the identity of those who submit parenting questions via his website and he does not know where they live.

34.     Plaintiff Rosemond does not know if the people whose questions he answers in his advice column ultimately follow his published advice.

35.     No reasonable parent whose question runs in one of Plaintiff Rosemond's columns would believe that he or she has entered into a formal clinical relationship with Plaintiff Rosemond, and Plaintiff Rosemond has never knowingly entered into a formal clinical relationship with anyone who has submitted a question to him via his website.

36.     No reasonable person who reads Plaintiff Rosemond's column would believe that, by answering a parent's question, Plaintiff Rosemond has created a formal clinical relationship with the person who submitted the question.

37.     "Psychologist" and "Kentucky-licensed psychologist" are not synonymous.

38.     No reasonable person who reads the tagline of Plaintiff Rosemond's column in a major newspaper of general circulation such as the *Lexington Herald-Leader* would conclude that Plaintiff Rosemond must be a *Kentucky-licensed* psychologist because the tagline describes Plaintiff Rosemond as a "psychologist."

39.     Many of Plaintiff Rosemond's books include questions and answers that have previously been published in one of Plaintiff Rosemond's advice columns.

## Kentucky Censors Plaintiff Rosemond's Advice Column

40.     On May 7, 2013, Defendant Attorney General Jack Conway, through Assistant Attorney General and Psychology Board General Counsel Brian T. Judy, sent Plaintiff Rosemond a letter stating that the Board of Examiners of Psychology ("Psychology Board" or "the Board") had reviewed Plaintiff Rosemond's February 12, 2013 column, among other materials. *See* Letter from Brian T. Judy, General Counsel, Ky. Bd. of Exam'rs of Psychology, to John Rosemond (May 7, 2013), at 1 (attached as Ex. A).

41.     The February 12, 2013 column ran in the *Lexington Herald-Leader* in Lexington, Kentucky. This newspaper has in the past co-sponsored or supported at least two of Plaintiff Rosemond's speaking engagements in Lexington.

42.     In this February 12, 2013 column, Plaintiff Rosemond responded to a question from parents who described their son as a "highly spoiled underachiever." Ex. B. The substance of Plaintiff Rosemond's advice was to take away the teenager's privileges until he showed consistent improvement. Plaintiff Rosemond warned the parents to persevere through any backlash from their son in order to keep him on the right track. *Id.*

43.     On February 13, 2013, Thomas Kirby Neill, Ph.D., a "retired clinical child psychologist, formerly licensed in Kentucky," wrote a letter to the Psychology Board to express his opinion that Plaintiff Rosemond's advice in his February 12, 2013 column was "unprofessional and unethical." *See* Letter from Thomas Kirby Neill, Ph.D., to Ky. Bd. of Exam'rs of Psychology (Feb. 13, 2013) (attached as Ex. C). As stated in his letter, Dr. Neill faulted Plaintiff Rosemond for dispensing advice without performing a "personal assessment of the child and family, and without a professional relationship that allows him to follow up" on his advice. *Id.* Dr. Neill noted in his letter that he had complained to the Psychology Board before

about Plaintiff Rosemond's column, and urged the Board at least to prevent Plaintiff Rosemond from using the word "psychologist" to describe himself in his columns published in Kentucky. *Id*.

44.     In his May 7, 2013 letter to Plaintiff Rosemond, Defendant Attorney General Conway, through Assistant Attorney General Judy, informed Plaintiff Rosemond that Defendant Attorney General and the Psychology Board concluded that he was unlawfully using the word "psychologist." Ex. A, at 1-2.

45.     Defendant Attorney General Conway and the Psychology Board based this conclusion on the fact that the tagline of Plaintiff Rosemond's column states, "Family Psychologist John Rosemond answers parents' questions on his web site at www.rosemond.com," and on the Kentucky statute that prohibits anyone but a Kentucky-licensed psychologist from using the word "psychologist" as a self-description. Ex. A, at 1-2 (citing Ky. Rev. Stat. § 319.005).

46.     Defendant Attorney General Conway and the Psychology Board also concluded that Plaintiff Rosemond's column violated the statute proscribing the unlicensed practice of psychology because Plaintiff Rosemond's "response to a specific question from a parent about handling a teenager was a psychological service to the general public." Ex. A, at 2 (citing Ky. Rev. Stat. § 319.010(7)).[1]

47.     Defendant Attorney General Conway, through Assistant Attorney General Judy, used his May 7, 2013 letter to direct Plaintiff Rosemond to sign, have notarized, and return a document called "Cease and Desist Affidavit and Assurance of Voluntary Compliance" by May 30, 2013. Ex. A, at 2.

---

[1] The Attorney General's letter also cites Ky. Rev. Stat. § 319.010(6), but that "(6)" appears to be a typographical error and should have read "(7)."

48. Defendant Attorney General Conway, through Assistant Attorney General Judy, stated in his May 7, 2013 letter that signing the Cease and Desist Affidavit "will end any further action by the Board at this time." Ex. A, at 2.

49. Defendant Attorney General Conway, through Assistant Attorney General Judy, used his May 7, 2013 letter to threaten Plaintiff Rosemond with the "time, expense, and delay of . . . further legal action." The letter specifically identified Ky. Rev. Stat. § 319.118(2), which authorizes the Psychology Board to bring civil actions to enjoin violations of the Psychology Practice Act. Ex. A, at 2.

50. Paragraph one of the Cease and Desist Affidavit requires Plaintiff Rosemond to confess to practicing psychology in Kentucky without a license, and also to confess to using the word "psychologist" to describe himself in Kentucky without a license. *See* Cease & Desist Aff. & Assurance of Voluntary Compliance ¶ 1 (attached as Ex. D).

51. Paragraphs three and four of the Cease and Desist Affidavit require Plaintiff Rosemond to promise never again to engage in the unlicensed practice of psychology or use the word "psychologist" to describe himself in Kentucky. Ex. D ¶¶ 3-4.

52. The purpose of Defendant Attorney General's May 7, 2013 letter, as well as the purpose of the Cease and Desist Affidavit, is to prevent Plaintiff Rosemond from again causing an advice column to be published in Kentucky that is materially similar to his February 12, 2013 column in which he provided specific advice to a specific person about a specific personal problem and in which he truthfully described himself as a "psychologist."

53. Plaintiff Rosemond does not know whether the parents whose question he ran in his February 12, 2013 column are residents of Kentucky or even if they are residents of the

United States. Nor does Plaintiff Rosemond know if the parents who submitted the question actually read his column responding to their question.

54.     Neither Defendant Attorney General Conway, nor Assistant Attorney General Judy, nor any Defendant member of the Psychology Board knows where the parents reside who wrote the question that Plaintiff Rosemond answered in his February 12, 2013 column.

55.     Plaintiff Rosemond does not know whether the parents whose question he ran in his February 12, 2013 column followed his advice.

56.     Neither Defendant Attorney General Conway, nor Assistant Attorney General Judy, nor any Defendant member of the Psychology Board knows whether the parents whose question he ran in his February 12, 2013 column followed his advice.

57.     Defendant Attorney General Conway, through Assistant Attorney General Judy, stated in his May 7, 2013 letter that Plaintiff Rosemond had until May 30, 2013 to return the executed Cease and Desist Affidavit.

58.     On May 16, 2013, Plaintiff Rosemond sent a letter to Assistant Attorney General Brian T. Judy stating that Plaintiff Rosemond did not believe that his February 12, 2013 advice column constituted the unlicensed practice of psychology. *See* Letter from John Rosemond to Brian T. Judy, General Counsel, Ky. Bd. of Exam'rs of Psychology (May 16, 2013) 1-2 (attached as Ex. E).

59.     Plaintiff Rosemond's May 16, 2013 letter to Assistant Attorney General Judy pointed out that over the "past few decades there has been a proliferation of newspaper and magazine advice columns, radio advice programs, and television advice programs." Ex. E, at 1-2. Plaintiff Rosemond named several high-profile people who provide parenting advice, including

Philip McGraw, Ph.D. (television's "Dr. Phil") and Laura Schlessinger, Ph.D. (radio's "Dr. Laura"). *Id.* at 1-2.

60.     In addition to Dr. Phil and Dr. Laura, there are many national-level advice personalities who educate and entertain by offering individualized advice in response to questions from readers, listeners, or viewers. All of the following advice personalities, including the venerable Dear Abby column, are readily available in Kentucky, and appear on television, on the radio, on the Internet, in books, and in newspapers such as *The New York Times* and *The Washington Post*:

> Jeanne Phillips ("Dear Abby"), Susan Orman ("The Suze Show"), Ruth Westheimer ("Sexually Speaking"), Dave Ramsey ("The Dave Ramsey Show"), John Gray ("Mars and Venus"), Dan Savage ("Savage Love"), Drew Pinsky ("Loveline"), Amy Dickinson ("Advice for the Real World"), Carolyn Hax ("Advice from Carolyn Hax"), Kathy Nickerson ("RelationTips"), Enid Traisman ("Dear Enid"), Carol Ross ("Unsolicited Advice"), Clara Garza ("Clara's Free Online Advice Column"), J. Lynne ("The ABC's of Life"), Alison Blackman ("Advice Sisters"), Diana Kirschner ("Love in 90 Days"), Cheryl Strayed ("Dear Sugar"), Cary Tennis ("Since You Asked), Emily Yoffe ("Dear Prudence"), Harriet Mosatche ("Ask Dr. M"), Anita McDaniel ("Ask Dr. K"), Diane Von Furstenberg ("Dear Diane Von Furstenberg"), Miriam Steinberg-Egeth ("Miriam's Advice Well"), Chuck Klosterman ("The Ethicist"), Judith Lee ("Ask Judith"), Sherry Blake ("Ask Dr. Sherry"), Paul Carrick Brunson ("Modern Day Matchmaker"), Elizabeth Carroll ("Ask E. Jean"), Jeffrey Seglin ("The Right Thing"), Amy Alkon ("The Advice Goddess"), Cherie Bennett ("Hey, Cherie!"), Robert Wallace ("Tween 12 and 20"), Amy Richards ("Ask Amy"), Helen Williams ("The Dr. Helen Show"), Romel Axibal ("How to Bend Your Spoon"), Carol Scott ("Stress Relief Radio"), Greg and Lisa Popcak ("More 2 Life"), Jenn Berman ("The Love and Sex Show with Dr. Jenn"), Roy Master ("Advice Line"), Erin Tillman ("The Dating Advice Girl"), Joy Browne ("The Dr. Joy Browne Show"), Jeanne Laskas ("Ask Laskas), Margo Howard ("Dear Margo"), Judith Martin ("Miss Manners"), Marcy Sugar and Kathy Mitchell ("Annie's Mailbox"), Ellie Tesher ("Ask Ellie"), Cheryl Lavin ("Tales from the Front" and "Relationship Advice by Cheryl Lavin"), Marguerite Kelly ("Family Almanac"), Jessica Leigh ("Questionable Advice"), Harlan Cohen ("Help Me, Harlan!"), Josey Vogels ("My Messy Bedroom" and "Dating Girl"), Jan Denise ("Naked Relationships"), Steven Ward ("Tough Love"), Deborah Tillman ("America's Supernanny"), Joe Smith ("Hey Joe!"), Matt Moody ("CallDrMatt.com"), Jamie Turndorf ("Ask Doctor Love"), Wayne and Tamara Mitchell ("Direct Answers from Wayne and Tamara"), Sarah Brisden ("Advice Diva"), Judy Kuriansky ("Love, Sex, and Relationship Advice"), and Wendy Atterberry ("Dear Wendy").

61.     The advice column is a venerable form of speech in the Anglo-American world. For example, in 1691, the English author John Dutton began publishing the *Athenian Mercury*, which contained the first Dear Abby-style advice column in which readers sought published responses to questions about their personal life issues. In 1800, the *Baltimore Herald* began printing and responding to reader questions about their personal life issues. The first modern advice personality in America was "Dorothy Dix," the pseudonym for Elizabeth Meriwether Gilmer. She began writing an advice column on marriage in 1896 in the *New Orleans Times-Picayune*. By 1940, she was syndicated in more than 270 newspapers worldwide with an estimated personal readership of 60 million, making her the most-read female writer of her era. By World War II, she was receiving 100,000 questions by mail each week. Pauline Phillips began writing her iconic Dear Abby column in 1956 under the pseudonym "Abigail Van Buren." Eppie Lederer, Pauline Phillips' twin sister, took over the *Chicago Sun-Times*'s "Ann Landers" column, which was begun in 1943 as a pseudonym for Ruth Crowley.

62.     Plaintiff Rosemond's May 16, 2013 letter to Assistant Attorney General Judy also pointed out that it would be very difficult for Plaintiff Rosemond to withdraw his column solely from Kentucky because he submits his column directly to McClatchey-Tribune Information Services, based in Washington, D.C., which then distributes Plaintiff Rosemond's column to newspapers across the country without any involvement from Plaintiff Rosemond. Ex. E, at 2. Plaintiff Rosemond stated in his letter that he has no direct publishing relationship with the *Lexington Herald-Leader*. *Id*.

63.     Neither Defendant Attorney General Conway, nor Assistant Attorney General Judy, nor any Defendant members of the Psychology Board, nor any other Kentucky official responded to Plaintiff Rosemond's May 16, 2013 letter.

64.     On May 31, 2013, Plaintiff Rosemond faxed a letter to Assistant Attorney General Judy, which he also forwarded by email to Robin Vick, who is the Board Administrator of the Psychology Board, seeking an additional 45 days within which to respond to the Board's demand that Plaintiff Rosemond execute the Cease and Desist Affidavit or face punishment. *See* Letter from John Rosemond to Brian Judy, General Counsel, Ky. Bd. of Exam'rs of Psychology (attached as Ex. F). Plaintiff Rosemond sought this extension because he did not understand his legal rights and did not know how to best respond to the requirements of the Cease and Desist Affidavit.

65.     Plaintiff Rosemond made the extension request on May 31, 2013 because he was afraid that Defendant Attorney General or the Psychology Board, or both, would commence a criminal prosecution or a civil action against Plaintiff Rosemond following the Board's scheduled meeting on June 3, 2013.

66.     Neither Mr. Judy nor Ms. Vick responded to Plaintiff Rosemond's May 31, 2013 letter.

67.     The 45 additional days that Plaintiff Rosemond requested expired on Monday, July 15, 2013.

68.     On Tuesday, July 16, 2013, the *Lexington Herald-Leader* ran another column in which Plaintiff Rosemond is truthfully identified as a "psychologist."

69.     At the time of this filing, Plaintiff Rosemond's column is scheduled to run in Kentucky during the week of July 22, 2013, and roughly every week thereafter for the indefinite future, just as it has regularly run in Kentucky for years, including more than 20 years in the *Lexington Herald-Leader*.

70. Defendants could take legal action against Plaintiff Rosemond at any time. At the time of this filing, the Psychology Board's next scheduled meeting is July 18, 2013.

**Kentucky's Prohibition on the Unlicensed "Practice of Psychology" and on the Unlicensed Use of the Word "Psychologist"**

71. Kentucky requires a license to "engage in the practice of psychology." Ky. Rev. Stat. § 319.005(1).

72. The "practice of psychology" is statutorily defined, in substance, as using the principles of psychology to assist "individuals, groups, organizations, or the public" with the diagnosis, testing, or treatment of mental-health conditions, which can also include interpersonal, educational, professional, and other kinds of social conflicts. Ky. Rev. Stat. § 319.010(7).

73. The text of the statutory definition of the "practice of psychology" is:

> "Practice of psychology" means rendering to individuals, groups, organizations, or the public any psychological service involving the application of principles, methods, and procedures of understanding, predicting, and influencing behavior, such as the principles pertaining to learning, perception, motivation, thinking, emotions, and interpersonal relationships; the methods and procedures of interviewing, counseling, and psychotherapy; and psychological testing in constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotion, and motivation. The application of said principles in testing, evaluation, treatment, use of psychotherapeutic techniques, and other methods includes, but is not limited to: diagnosis, prevention, and amelioration of adjustment problems and emotional, mental, nervous, and addictive disorders and mental health conditions of individuals and groups; educational and vocational counseling; the evaluation and planning for effective work and learning situations; and the resolution of interpersonal and social conflicts[.]

Ky. Rev. Stat. § 319.010(7).

74. As this case illustrates, the statutory definition of the "practice of psychology" is not limited to private interactions, to paid interactions, or to interactions between a therapist and client in a traditional, paid, private clinical relationship.

75.     Kentucky also requires a license to practice psychology in order to use the word "psychologist" or its variants to describe oneself. Ky. Rev. Stat. § 319.005(1).

76.     To become licensed as a psychologist in Kentucky, an applicant must have earned a doctoral degree in psychology, have passed both national and state licensing exams, have completed two years of supervised practice, and have paid a $200 fee. Ky. Rev. Stat. § 319.050; 201 Ky. Admin. Reg. § 26:160.

77.     Both the unlicensed practice of psychology and the use of the word "psychologist" by an unlicensed person are crimes punishable by up to six months' imprisonment or a $500 fine, or both. Ky. Rev. Stat. § 319.990(1). Each violation is a separate offense. *Id.*

### Injury to Plaintiff Rosemond

78.     On May 7, 2013, Defendant Attorney General, via Assistant Attorney General Judy, sent Plaintiff Rosemond a letter indicating their final conclusion—as well as the conclusion of the Psychology Board—that Plaintiff Rosemond had engaged in the practice of psychology without a license, which is a crime and civil violation, by authoring an advice column published in Kentucky in which he gave one-on-one parenting advice. Ex. A.

79.     In that same May 7, 2013 letter, Defendant Attorney General Conway, via Assistant Attorney General Judy, stated their final conclusion—as well as the conclusion of the Psychology Board—that Plaintiff Rosemond had violated Kentucky's prohibition on the use of the word "psychologist" by persons who are not Kentucky-licensed psychologists, which is a crime and civil violation, by using the word "psychologist" in the tagline of his February 12, 2013 advice column to describe himself. Ex. A.

80.    All of Plaintiff Rosemond's columns describe him as a "psychologist," and a large proportion are also written in the question-and-answer format that Defendants have concluded is the unlicensed practice of psychology. Accordingly, every time Plaintiff Rosemond's weekly column runs in a Kentucky newspaper he is subject to as much as $1,000 in fines and a year in jail.

81.    Kentucky's psychologist-licensing statutes expressly grant Defendant Attorney General Conway and his subordinates such as Mr. Judy the authority to prosecute Plaintiff Rosemond criminally for the unlicensed practice of psychology in Kentucky. Ky. Rev. Stat. § 319.990(2). The Psychology Board also has the express authority to recover "investigative expenses including reasonable attorney fees" from Plaintiff Rosemond in the event of a successful criminal prosecution. *Id*. § 319.990(3).

82.    Kentucky's psychologist-licensing statutes also expressly grant the Psychology Board the authority to bring civil actions to restrain or enjoin violations of the Psychology Practice Act. Ky. Rev. Stat. § 319.118(2).

83.    In his May 7, 2013 letter, Defendant Attorney General Conway, via Assistant Attorney General Judy, instructed Plaintiff Rosemond to sign the Cease and Desist Affidavit. Signing the Affidavit would "end any further action by the Board at this time." Ex. A, at 2. To induce Plaintiff Rosemond to accede to the demand that he sign the Affidavit, the Board threatened Plaintiff Rosemond with separate, unspecified legal action if he were not to sign. *Id.* ("I trust that you will agree to resolve this matter now without the time, expense, and delay of any further legal action.").

84.    Based on the threats contained in the May 7, 2013 letter, as well as the failure of any Kentucky official to respond to either Plaintiff Rosemond's May 16, 2013 letter or his May

31, 2013 email, Plaintiff Rosemond has an objectively reasonable fear that he will be punished by Defendants due to his February 12, 2013 column if he does not sign the Cease and Desist Affidavit.

85.     Based on the threats contained in the May 7, 2013 letter, as well as the failure of any Kentucky official to respond to either Plaintiff Rosemond's May 16, 2013 letter or his May 31, 2013 email, Plaintiff Rosemond has an objectively reasonable fear that he will be punished by Defendants if he continues to write his column and allow it to be published in Kentucky.

86.     Plaintiff Rosemond, who travels approximately 120 days per year, takes Kentucky's threats of punishment seriously because he has in the past traveled to Kentucky approximately 15 times for speaking engagements and seminars. Approximately ten of those visits to Kentucky were to Lexington. The *Lexington Herald-Leader* has twice co-sponsored Plaintiff Rosemond's appearances in the Lexington area. Plaintiff Rosemond wishes to return to Kentucky again for speaking engagements and seminars within the next year.

87.     As part of his speaking engagements and during his seminars, Plaintiff Rosemond often provides individually tailored answers to specific questions from parents about their children. A public speaker is expected to interact with the audience and with seminar participants. Sometimes after a speaking engagement or seminar, Plaintiff Rosemond will meet informally with audience members or seminar participants to have further discussions on specific parenting issues from their lives. Because his presence in Kentucky is frequently the result of advertised events such as speaking engagements and seminars that involve his giving one-on-one advice to parents, and because the advertising associated with those events describes Plaintiff Rosemond as a "psychologist," Plaintiff Rosemond has an objectively reasonable fear of arrest

and punishment when he returns to Kentucky as part of his work as a professional writer and speaker on the topic of parenting.

88.     Based on the threats contained in the May 7, 2013 letter, as well as the failure of any Kentucky official to respond to either Plaintiff Rosemond's May 16, 2013 letter or his May 31, 2013 email, Plaintiff Rosemond has an objectively reasonable fear that he will be punished by Defendants if his column runs again anywhere in Kentucky—whether in the advice-column format or otherwise—if he truthfully uses the word "psychologist" to describe himself in the tagline of his column.

89.     Plaintiff Rosemond does not intend to sign the Cease and Desist Affidavit because he does not want to stop publishing his column in Kentucky or stop engaging in any other protected speech in Kentucky. But he also does not want to be arrested and prosecuted in Kentucky for the unlicensed practice of psychology or the unlawful use of the word "psychologist" because it is inherently injurious to suffer a criminal conviction.

90.     Plaintiff Rosemond also does not want to be prosecuted for the unlicensed practice of psychology or the unlawful use of the word "psychologist" because a conviction for either of these offenses may result in disciplinary proceedings against him in North Carolina by his licensing authority, the North Carolina Psychology Board. *See* N.C. Gen. Stat. § 90-270.15(a)(2) (providing for discipline for being convicted of a misdemeanor reflecting an inability to practice psychology); *id*. § 90-270.15(6) (providing for discipline for being disciplined in another jurisdiction for the unlicensed practice of psychology).

91.     Plaintiff Rosemond has no control over which papers carry his column or the time that elapses between when he sends his column to McClatchy-Tribune and when the column appears in print in any specific newspaper. Because Plaintiff Rosemond does not have a direct

relationship with any newspaper in Kentucky, and because every column of his that runs in a Kentucky newspaper is the result of distribution by the McClatchey-Tribune syndicate, Plaintiff Rosemond does not know if he could even cause his column to stop running in Kentucky without withdrawing his column from distribution/syndication altogether, thus causing his column to stop running nationally.

92. Because his books also contain questions and answers in the advice-column format (such questions and answers are actually from previously published columns), and because his books describe him as a "psychologist," Plaintiff Rosemond is afraid that Defendants will try to ban his books from being sold in Kentucky based on the same "unlicensed-practice" theory that they are invoking to ban his newspaper advice column.

93. Defendants actions also injure the thousands of people who read Plaintiff Rosemond's column and books, and who attend his speaking engagements and seminars. If Defendants are successful in censoring him, Plaintiff Rosemond's readers and listeners may not be able to be educated and entertained by his work as a professional writer and speaker on the topic of parenting.

94. Defendants actions also injure the many authors and television and radio personalities who use the personal-advice format to educate and entertain the consumers of their speech.

## CONSTITUTIONAL VIOLATIONS

### Count One: First Amendment
### Banning Plaintiff Rosemond's Newspaper Advice Column

95. Plaintiff Rosemond re-alleges and incorporates every allegation set forth in paragraphs 1 through 94 as though fully set forth herein.

96.     Defendants have banned Plaintiff Rosemond's newspaper column from being published in Kentucky to the extent it uses the one-on-one advice format.

97.     The Speech and Press Clauses of the First Amendment to the U.S. Constitution protect the right to speak freely and to publish opinions in the newspaper freely.

98.     Plaintiff Rosemond's advice column of February 12, 2013, as published in the *Lexington Herald-Leader*, is pure speech and does not fall within any historically recognized exception to the First Amendment.

99.     The application by Defendants of the Psychology Practice Act, as well as the attendant regulations and policies of the Psychology Board, to ban Plaintiff Rosemond's advice column from Kentucky is a content-based restriction on his speech.

100.    Defendants lack a compelling state interest in banning advice columns from newspapers of general circulation.

101.    Defendants' ban of Plaintiff Rosemond's advice column—a column that has run for 37 years (and for more than 20 years in the *Lexington Herald-Leader*)—based on the single column of February 12, 2013, is not narrowly tailored to any state interest, much less a compelling state interest, in preventing people who write to advice columns from receiving that advice.

102.    Defendants' ban of Plaintiff Rosemond's advice column—a column that has run for 37 years—based on the single column of February 12, 2013, is not narrowly tailored to any state interest, much less a compelling state interest, in preventing the readers of his advice column from being educated and entertained by it.

103.    Defendants' censorship of Plaintiff Rosemond's newspaper column violates the First Amendment.

104.     Unless Defendants' conduct is declared unconstitutional and they are enjoined, Plaintiff Rosemond will suffer irreparable harm in being unable to write his advice column without fear of prosecution in Kentucky during his travels to Kentucky.

### Count Two: First Amendment
### Plaintiff Rosemond's Use of the Word "Psychologist"

105.     Plaintiff Rosemond re-alleges and incorporates every allegation set forth in paragraphs 1 through 94 as though fully set forth herein.

106.     Defendants have forbidden Plaintiff Rosemond from describing himself as a "psychologist" or "family psychologist" in Kentucky even though that is an entirely accurate description.

107.     The Speech and Press Clauses of the First Amendment to the U.S. Constitution protect the right to speak freely and to publish truthful statements about oneself.

108.     Plaintiff Rosemond's use of the term "family psychologist" in his advice column of February 12, 2013, as published in the *Lexington Herald-Leader* and as published in his books, is pure speech and does not fall within any historically recognized exception to the First Amendment.

109.     Defendants' application of the Psychology Practice Act, as well as the attendant regulations and policies of the Psychology Board, to prohibit Plaintiff Rosemond from using the word "psychologist" to describe himself in Kentucky is a content-based restriction on his truthful speech.

110.     Defendants lack a compelling state interest in preventing people from making truthful statements about themselves, including making truthful statements about their professional credentials.

111.     Defendants' prohibition on Plaintiff Rosemond's truthful use of the word "psychologist" to describe himself is not narrowly tailored to any state interest, much less a compelling state interest, in preventing anyone from learning that Plaintiff Rosemond is a psychologist.

112.     Defendants' prohibition on Plaintiff Rosemond's truthful use of the word "psychologist" to describe himself violates the First Amendment.

113.     Unless Defendants' conduct is declared unconstitutional and they are enjoined, Plaintiff Rosemond will suffer irreparable harm in being unable to use the word "psychologist" to describe himself truthfully in the tagline of his advice column, in his books, and in other contexts.

### Count Three: First Amendment
### Plaintiff Rosemond's Books

114.     Plaintiff Rosemond re-alleges and incorporates every allegation set forth in paragraphs 1 through 94 as though fully set forth herein.

115.     The theory underlying Defendants' ban on Plaintiff Rosemond's advice column could be directly applied to any of Plaintiff Rosemond's books that include reprinted questions and answers from previous advice columns.

116.     The theory underlying Defendants' ban on Plaintiff Rosemond's truthful use of the word "psychologist" to describe himself could be directly applied to any of Plaintiff Rosemond's books, each of which truthfully describes him as a psychologist.

117.     The Speech and Press Clauses of the First Amendment to the U.S. Constitution protect the right to speak freely, to publish books on the topic of the author's choosing, and to include in that book any content of the author's choosing.

118. Plaintiff Rosemond's opinions, including opinions expressed in a book in the form of advice to a specific reader of his advice column, are pure speech and do not fall within any historically recognized exception to the First Amendment. Plaintiff Rosemond's truthful use of the word "psychologist" to describe himself is also pure speech and does not fall within any historically recognized exception to the First Amendment.

119. The application of the Kentucky Psychology Practice Act, as well as the attendant regulations and policies of the Psychology Board, to ban any of Plaintiff Rosemond's books on the ground that they contain individualized advice or illegally use the word "psychologist" as a description for Plaintiff Rosemond would be a content-based restriction on his speech.

120. Defendants lack a compelling state interest in banning books because they contain opinions expressed in the form of individualized advice to someone who has written in to Plaintiff Rosemond's advice column, had that question answered, and had that exchange subsequently republished in a book. Defendants also lack a compelling state interest in banning books because they truthfully use the word "psychologist" to describe the author.

121. Defendants' ban of any book by Plaintiff Rosemond could not be narrowly tailored to any state interest, much less a compelling state interest, in preventing people who write to advice columns from receiving that advice, or in preventing people from seeing that an author has truthfully described himself as a "psychologist."

122. Defendants' ban of any book by Plaintiff Rosemond could not be narrowly tailored to any state interest, much less a compelling state interest, in preventing the readers of his books from being educated and entertained by them.

123. Defendants' ban of any book by Plaintiff Rosemond would violate the First Amendment.

124.     Unless Defendants' conduct is declared unconstitutional and they are enjoined, Plaintiff Rosemond will suffer irreparable harm in being fearful that he could be arrested and prosecuted for allowing books to be sold in Kentucky under his authorship that contain opinions expressed in the form of individualized advice from his past advice columns.

**Count Four: First Amendment**
**Facial Overbreadth of the Definition of the "Practice of Psychology"**

125.     Plaintiff Rosemond re-alleges and incorporates every allegation set forth in paragraphs 1 through 94 as though fully set forth herein.

126.     The unconstitutional application of the Kentucky Psychology Practice Act to Plaintiff Rosemond to ban his newspaper column (and potentially his books) is a result of the extraordinary breadth of the statutory definition of the practice of psychology.

127.     As this case illustrates, the statutory definition of the practice of psychology prohibits innocuous and venerable forms of constitutionally protected speech, including opinion columns in newspapers of general circulation.

128.     Defendants have applied the sweeping definition of the "practice of psychology" to ban Plaintiff Rosemond's advice column on parenting. Given the extraordinary breadth of this definition, which covers, without meaningful limitations, "the resolution of interpersonal and social conflicts," Ky. Rev. Stat. § 319.010(7), it could plausibly be applied to other innocuous and venerable forms of speech such as one-on-one advice on other ordinary topics like marriage, job satisfaction, relationships, and personal well-being. Such advice is ubiquitous not only in personal lives among family, friends, and coworkers, but also on Internet forums where millions of people exchange individualized advice on topics that are covered by the Psychology Practice Act under the same broad reading that Defendants have applied to Plaintiff Rosemond.

129.     As this case illustrates, the statutory definition of the "practice of psychology" could also be applied to any of the many major personalities such as Plaintiff Rosemond who educate and entertain using the one-on-one advice format, and who have a presence in Kentucky in their newspaper columns, radio and television shows, Internet sites, and books. Examples of these personalities are listed in paragraph 60 of this Complaint.

130.     As illustrated by this case, the Psychology Practice Act sweeps far more broadly than is necessary for Kentucky to advance any interest in regulating a private clinical relationship between a Kentucky-licensed psychologist and a Kentucky resident who is a paying client of that psychologist and who seeks the amelioration of a specific, diagnosable psychological disorder.

131.     As this case illustrates, in sweeping far more broadly than necessary to advance any government interest in regulating private clinical relationships between Kentucky-licensed psychologists and Kentucky residents, the Kentucky Psychology Practice Act imperils countless speakers and their listeners, imperils newspaper columns, radio shows, television programs, books, Internet sites, and other forums where people exchange advice on topics that fall under the Practice Act's extraordinarily broad definition of the practice of psychology.

132.     As this case illustrates, Defendant Attorney General and Defendant members of the Psychology Board cannot be trusted to enforce the sweepingly broad Psychology Practice Act in a way that respects the traditional free-speech and free-press rights of Americans to write advice columns and share one-on-one advice in other contexts.

133.     The statutory definition of the "practice of psychology" in the Kentucky Psychology Practice Act is facially unconstitutional because the unconstitutional applications of that definition are substantial in relation to whatever legitimate sweep that definition might have.

134.     Unless Defendants' conduct is declared unconstitutional and they are enjoined from enforcing the statutory definition of the practice of psychology, Plaintiff Rosemond and other speakers and listeners will suffer irreparable harm in being fearful that their speech in the form of individualized advice on topics covered by the definition of the practice of psychology will result in censorship, fines, and even jail.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

1.     For entry of judgment declaring that Ky. Rev. Stat. §§ 319.005 *et seq.*, and the rules and regulations promulgated thereunder are unconstitutional on their face and as applied to the extent that they limit the right of persons other than Kentucky-licensed psychologists to provide individualized advice about parenting outside of a paid, private, clinical relationship that seeks the amelioration of a specific, diagnosable psychological disorder.

2.     For entry of judgment declaring that Ky. Rev. Stat. §§ 319.005 *et seq.*, and the rules and regulations promulgated thereunder are unconstitutional on their face and as applied to the extent that they limit the right of persons other than Kentucky-licensed psychologists to truthfully describe themselves as psychologists in contexts other than the solicitation in Kentucky of clients for paid, private, clinical relationships that seek the amelioration of specific, diagnosable psychological disorders.

3.     For entry of preliminary and permanent injunctions against the Defendants prohibiting the enforcement of these regulations, laws, rules, and policies against Plaintiff Rosemond and other similarly situated persons;

4.     For an award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

5.     For such further legal and equitable relief as the Court may deem just and proper.

Dated: July 16, 2013.

Respectfully submitted,

INSTITUTE FOR JUSTICE
Jeff Rowes*
Paul M. Sherman*
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: jrowes@ij.org; psherman@ij.org
* Motions for admission *pro hac vice* pending

*Attorneys for Plaintiff*

/s/ Richard A. Brueggemann

Richard A. Brueggemann (90619)
HEMMER DEFRANK PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 344-1188
Fax: (859) 578-3869
rbrueggemann@hemmerlaw.com

*Local Counsel for Plaintiff*

**Verification by Plaintiff John Rosemond**

I, John Rosemond, declare as follows:

I have personal knowledge of the facts set forth in this complaint, and if called upon, I would competently testify as to them, with the exceptions of paragraphs 60-61, which are made on information and belief.

I verify under penalty of perjury under the laws of the United States of America that the factual statements in this complaint concerning myself, my newspaper column, and my interaction with the Kentucky Attorney General and the Kentucky Board of Examiners of Psychology, are true.

Executed this 16th day of July, 2013.

_____
John Rosemond