**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
Frankfort Division**

JOHN ROSEMOND,

     Plaintiff,

                                 Civil Action No.

v.

JACK CONWAY, *ET AL.*,

     Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

---

Jeff Rowes*
Paul M. Sherman*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
E-mail: jrowes@ij.org; psherman@ij.org
 *Motions for Admission *Pro Hac Vice*
Pending

*Attorneys for Plaintiff*

Richard A. Brueggemann (90619)
HEMMER DEFRANK PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 578-3855
Fax: (859) 578-3869
rbrueggemann@hemmerlaw.com

*Local Counsel for Plaintiff*

## Table of Contents

Page(s)

REQUEST FOR IMMEDIATE EMERGENCY RELIEF AND ORAL
ARGUMENT.................................................................................................1

INTRODUCTION...........................................................................................1

FACTS ..........................................................................................................2

ARGUMENT..................................................................................................6

I.   PLAINTIFF ROSEMOND IS LIKELY TO SUCCEED ON THE MERITS
     BECAUSE THE FIRST AMENDMENT PROHIBITS THE BOARD'S
     CENSORSHIP OF HIS ADVICE COLUMN AND HIS TRUTHFUL USE OF
     THE WORD "PSYCHOLOGIST." ....................................................................7

     A.  The Board's Censorship of Plaintiff Rosemond's Advice Column Violates the
         First Amendment. ..............................................................................8

         1.  Plaintiff Rosemond's parenting advice is speech protected by the First
             Amendment. ................................................................................9

         2.  The Board's content-and speaker-based censorship of Plaintiff
             Rosemond's speech is subject to strict scrutiny. ...........................11

         3.  The censorship of Plaintiff Rosemond's advice column cannot survive
             strict scrutiny.............................................................................13

             i.    Kentucky has no compelling interest in censoring parenting advice
                   in a newspaper.....................................................................13

             ii.   Kentucky's censorship of Plaintiff Rosemond's speech is not
                   narrowly tailored. ...............................................................15

     B.  The Board's Censorship of Plaintiff Rosemond's Truthful Use of the Title
         "Psychologist" Violates the First Amendment.................................16

II.  PLAINTIFF ROSEMOND SATISFIES THE REMAINING REQUIREMENTS
     FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY
     INJUNCTION. ...........................................................................................19

III. THIS COURT SHOULD WAIVE THE BOND REQUIREMENT OF RULE
     65(C) BECAUSE THIS IS A FIRST AMENDMENT CASE WITH NO MONEY
     AT STAKE. ...............................................................................................20

**Conclusion** ....................................................................................................................................21

## Table of Authorities

**Page(s)**

__Cases__

*Am. Freedom Def. Initiative v. Suburban Mobility Auth. For Reg'l Transp.*, 698 F.3d 885 (6th Cir. 2012) ...................................................................................................................19

*Argello v. City of Lincoln*, 143 F.3d 1152 (8th Cir. 1998)............................................17

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ....................................................................9

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959 (10th Cir. 1996)...........17

*CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975) .......................................................10

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980).....................17, 18

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)..............................15

*Citizens United v. FEC*, 558 U.S. 310 (2010)................................................12, 13, 14

*City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084 (5th Cir. 1981)................20

*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) ...........................................15

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) ................................................................15

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984)..................................................12

*Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474 (6th Cir. 1995)...............20

*DeLisle v. Rivers*, 161 F.3d 370 (6th Cir. 1998)...........................................................9

*First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765 (1978)..................................................9

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994)................20

*Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418 (2006)...................13

*Hamilton's Bogarts, Inc., v. Michigan*, 501 F.3d 644 (6th Cir. 2007)..........................................19

*Holder v. Humanitarian Law Project*, 130 S. Ct. 2705 (2010) ................................................9, 11

*Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136 (1994) .................................16, 18

*Kovacs v. Cooper*, 336 U.S. 77 (1949) .......................................................................12

**Page(s)**

*Lovell v. City of Griffin*, 303 U.S. 444 (1938) ..............................................................9

*Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010) ..........................................7

*Mills v. Alabama*, 384 U.S. 214 (1966) .......................................................................9

*Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171 (6th Cir. 1995) .......................20

*Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331 (4th Cir. 2005)....................................15

*New York Times Co. v. United States*, 403 U.S. 713 (1971)........................................9

*Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000) ...............................................13

*Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003) ............................................17

*Peel v. Attorney Registration and Disciplinary Comm'n of Ill.*, 496 U.S. 91 (1990)....................17

*Pennekamp v. Florida*, 328 U.S. 331 (1946) ..............................................................10

*Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) .........................................................14

*Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781 (1988) ...............................................13

*Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653 (2011) ...................................................13

*Stand Up Am. Now v. City of Dearborn*, No. 12-11471, 2012 U.S. Dist. LEXIS 48478 (E.D. Mich. Apr. 5, 2012).....................................................................................20

*United Food & Commercial Workers Union, Local 1099 v. S.W. Ohio Reg'l Transit Auth.*, 163 F.3d 341 (6th Cir. 1998) ...............................................................................19

*United States v. Alvarez*, 132 S. Ct. 2537 (2012) ................................................16, 18

*United States v. Contents of Accounts*, 629 F.3d 601 (6th Cir. 2011) .......................6, 7

*United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995)............................13

*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000)..........................12, 13

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976) ...16

**Page(s)**

**Statutes**

Ky. Rev. Stat. § 319.010(7) .................................................................................4, 8, 12

Ky. Rev. Stat. § 319.118(2) .................................................................................4

Ky. Rev. Stat. § 319.990....................................................................................4

**Other Authorities**

Austin Peay State University, *Research Guide: The Dorothy Dix Special Collection* (2005), http://library.apsu.edu/dix/research/guide.htm (last visited July 15, 2013)...................................10

David Gudelunas, *Confidential to America: Newspaper Advice Columns and Sexual Education* 21-22 (2007)....................................................................................10

Michael Martinez, *Pauline Phillips, Longtime Dear Abby Columnist, Dies at 94*, CNN (Mar. 7, 2013, 11:41 AM), http://www.cnn.com/2013/01/17/showbiz/dear-abby-pauline-phillips-obit (last visited July 15, 2013)....................................................................................10

*1896: Dorothy Dix's Advice Column Keeps New Orleans Reading*, The Times-Picayune (New Orleans) (Sept. 30, 2011), http://www.nola.com/175years/index.ssf/2011/09/1896_dorothy_dixs_advice_colum.html .......10

**REQUEST FOR IMMEDIATE EMERGENCY RELIEF AND ORAL ARGUMENT**

Plaintiff John Rosemond respectfully submits this brief in support of his motion for a temporary restraining order and for a preliminary injunction. Due to the emergency nature of this motion, Plaintiff Rosemond asks that this Court immediately issue a temporary restraining order to enjoin Defendants from punishing him for allowing his nationally syndicated advice column to run each week in Kentucky. Plaintiff Rosemond also respectfully asks that this Court schedule expedited oral argument regarding the motion for preliminary injunction for no later than August 2, 2013.

**INTRODUCTION**

Plaintiff Rosemond seeks a temporary restraining order and preliminary injunction under the First Amendment to halt Kentucky's unprecedented censorship of his weekly newspaper column. Plaintiff Rosemond is a North Carolina-licensed psychologist and bestselling author who for 37 years has written an advice column—now syndicated in over 200 newspapers nationwide—in which he answers reader-submitted questions about parenting. In May, Defendant Attorney General and Defendant members of the Kentucky Board of Examiners of Psychology (collectively, "the Board"), concluded that Plaintiff Rosemond's advice column and his truthful use of the word "psychologist" to describe himself violate Kentucky's psychology practice act. The Board has ordered Plaintiff Rosemond to stop publishing his weekly newspaper column in Kentucky or face criminal penalties of up to six months in jail or $500 in fines per offense.

By the Board's reasoning, Kentucky could jail Dear Abby and ban Dr. Phil from the airwaves. Such censorship strikes at the very core of the First Amendment's protection for freedom of speech and the press. Under the First Amendment, the government can neither criminalize pure speech in the form of an advice column, nor grant a monopoly on ordinary

1

advice to state-designated experts. Nor can the government prohibit Plaintiff Rosemond from truthfully using the word "psychologist" to describe himself. Accordingly, this Court should grant an immediate temporary restraining order followed by a preliminary injunction to ensure that Plaintiff Rosemond can publish his popular advice column in Kentucky without fear of civil or criminal punishment while this case proceeds to judgment.

## FACTS

John Rosemond is a 65-year-old resident of North Carolina. Verified Complaint ¶ 9. He has a master's degree in psychology and is a registered North Carolina Psychological Associate, which entitles him to use the title "psychologist" in North Carolina. *Id.* ¶ 10. His primary professional focus in on effective parenting, and he has written more than a dozen books on the topic, five of which are bestsellers. *Id.* ¶¶ 12, 14. Plaintiff Rosemond is also a syndicated newspaper columnist who has, for nearly 40 years, written an advice column in which he gives people advice on a range of topics related to parenting. *Id.* ¶ 19. Plaintiff Rosemond's column is syndicated through McClatchy-Tribune and appears in more than 200 newspapers nationwide. *Id.* ¶ 22.

In about half of his columns, Plaintiff Rosemond answers specific questions from parents about their own children. *Id.* ¶ 25. Questions for Plaintiff Rosemond's column are solicited through his website, www.rosemond.com. *Id.* ¶ 30. Before the advent of the Internet, Plaintiff Rosemond would write about questions that he received at parenting seminars that he conducts throughout the country. *Id.* ¶ 29. Plaintiff Rosemond does not know the identity of those who submit parenting questions via his website, nor does he know where they live. *Id.* ¶ 33. Plaintiff Rosemond does not receive payment from the parents whose questions he answers in his column, nor does he enter into any formal psychologist-client relationship with the parents who submit questions for his column. *Id.* ¶¶ 32, 35.

2

On February 12, 2013, the *Lexington Herald-Leader* ran a column by Plaintiff Rosemond in which he responded to a question from parents who were concerned about the behavior of their 17-year-old son, whom they described as a "highly spoiled underachiever." *Id.* ¶ 42 & Ex. B. Plaintiff Rosemond, who believes that children do best when their parents set clear rules and boundaries, wrote that their son was in "dire need of a major wake-up call" and advised that they take away his electronic devices and suspend his privileges until he shapes up. *See id.* ¶¶ 13, 42 & Ex. B. He advised that they be firm and avoid negotiating with their son, warning that, if they did, "[i]n no time you will be right back where you started from, but he will know that he can beat you at your own game." *Id.* ¶ 42 & Ex. B.

Plaintiff Rosemond's column prompted a response from a retired Kentucky psychologist, Thomas Kirby Neill, Ph.D., who contacted the Kentucky Board of Examiners of Psychology to complain. *Id.* ¶ 43 & Ex. C. Dr. Neill's letter, copies of which were also sent to Plaintiff Rosemond and to the *Lexington Herald-Leader*, complained that Plaintiff Rosemond's advice was "both unprofessional and unethical" because he had not conducted an individualized assessment of the child. *Id.* ¶ 43. Accordingly, Dr. Neill suggested that the Board "ask newspapers carrying Mr. Rosemond's column in Kentucky to either discontinue using the term 'psychologist' to describe Mr. Rosemond, or to carry a disclaimer that states, 'Mr. Rosemond has not met the professional criteria to call himself a psychologist in the state of Kentucky.'" *Id.*

The Kentucky Attorney General's office, acting on behalf of the Psychology Board, concluded that Plaintiff Rosemond's column violated the Psychology Practice Act. On May 7, 2013, the Kentucky Attorney General's office sent Plaintiff Rosemond a cease-and-desist letter representing the Board's conclusion. *Id.* ¶¶ 44-47 & Ex. A. The letter was sent in the name of Attorney General Jack Conway, signed by Assistant Attorney General Brian T. Judy. *Id.* ¶ 44.

The letter stated that Kentucky law restricts "the practice of psychology and the use of protected words such as 'psychologist' only to those persons credentialed by [the Kentucky] Board." *Id.* ¶ 78 & Ex. A. The letter went on to describe the February column as a "response to a specific question from a parent about handling a teenager" and to conclude that this column "was a psychological service to the general public, which constituted the practice of psychology as defined by [Ky. Rev. Stat. §] 319.010(7)." *Id.* ¶ 46 & Ex. A. The letter then stated that, "[b]ased upon the Board's review of this matter, the Board has concluded that you are engaged in the unlawful practice of psychology in Kentucky." *Id.* ¶ 44 & Ex. A.[1] Although the letter did not describe the penalties for the unlicensed practice of psychology or the use of the term psychologist by an unlicensed person, both are criminal offenses punishable by up to six months in jail or $500 in fines per offense. Ky. Rev. Stat. § 319.990. The Board also has the authority to bring civil proceedings to enforce the Psychology Practice Act. Ky. Rev. Stat. § 319.118(2).

The letter directed Plaintiff Rosemond to read, sign, date, and have notarized a "Cease and Desist Affidavit and Assurance of Voluntary Compliance," which repeated the Board's conclusion that Plaintiff Rosemond's column constituted both the unlicensed practice of psychology and the unlawful use of the title "psychologist." *Id.* ¶ 47 & Ex. D. The letter stated that signing the affidavit would "end any further action by the Board at this time." If Plaintiff Rosemond refused to comply with the demand for silence, the Board threatened to institute legal proceedings against him. *Id.* ¶ 49 & Ex. D. ("I trust that you will agree to resolve this matter now without the time, expense, and delay of any further legal action.").

---

[1] Remarkably, nothing in either the cease-and-desist letter or in Plaintiff Rosemond's February 12 column indicates that the parents who submitted the question addressed in that column were residents of Kentucky. Plaintiff Rosemond has no idea where the parents who submitted that question reside, or whether they even saw his response. Verified Complaint ¶ 53-54 & Exs. A, B.

4

Plaintiff Rosemond has not signed or returned the cease-and-desist affidavit, which the Attorney General requested be returned by May 30, 2013. *See id.* ¶¶ 57-58. On May 31, 2013, Plaintiff Rosemond faxed a letter to Assistant Attorney General Judy, asking for an additional 45 days in which to respond. *Id.* ¶ 64 & Ex. F. Plaintiff Rosemond also forwarded that letter by email to Ms. Robin Vick, the Board administrator of the Psychology Board. *Id.* The Board did not respond. *Id.* ¶ 66.

Plaintiff Rosemond will not sign the cease-and-desist affidavit for two reasons. First, he does not want to stop his column from running in Kentucky or stop truthfully referring to himself as a "psychologist" because he has First Amendment rights to engage in this speech. Second, it would be very difficult as a practical matter for him to comply with the cease-and-desist letter. *Id.* ¶¶ 89-94. Plaintiff Rosemond does not have individual contracts with the papers he is syndicated in. *Id.* ¶ 91. Instead, he has a contract with McClatchy-Tribune, which ships the column out nationwide. *Id.* ¶¶ 31, 91. Plaintiff Rosemond has no control over which papers carry his column or the time that elapses between when he sends his column to McClatchy-Tribune and when the column appears in print in any specific newspaper. *Id.* ¶ 91. At the time of this filing, however, Plaintiff Rosemond's column is scheduled to run in Kentucky during the week of July 22, 2013, and roughly every week thereafter for the indefinite future, just as it has regularly run in Kentucky for years, including more than 20 years in the *Lexington Herald-Leader*. *Id.* ¶ 69.

Plaintiff Rosemond wishes to continue publishing his column through McClatchy-Tribune, including in the *Lexington Herald-Leader*, and to continue truthfully describing himself in that column as a "psychologist." *See id.* ¶¶ 69, 89. He feels chilled from doing so, however, because of his objectively reasonable fear of criminal or civil penalties, which could add up to

5

years in jail and thousands of dollars in fines over the pendency of this litigation. *Id.* ¶¶ 77, 80, 85, 88, 90. The 45 additional days that Plaintiff Rosemond requested expired yesterday, July 15, 2013. *See id.* ¶ 67. This morning, the *Lexington Herald-Leader* again ran a column by Plaintiff Rosemond in which he is truthfully identified as a family psychologist. *Id.* ¶ 68. This coming Thursday, July 18, the Psychology Board will hold its next meeting, at which it could authorize legal action against Plaintiff Rosemond for his failure to return the required cease-and-desist affidavit and for the continued publication of his column in Kentucky. *See id.* ¶ 70.

## ARGUMENT

A temporary restraining order and preliminary injunction are necessary. The Board has concluded that Plaintiff Rosemond's column and his truthful use of the word "psychologist" violate the Psychology Practice Act. The Board has also threatened to institute unspecified legal proceedings if Plaintiff Rosemond does not stop engaging in these forms of speech. The Board could initiate that action as early as July 18, when they next meet. In the meantime, without the protection of this Court, Plaintiff Rosemond is potentially subject to a year in jail and $1,000 in fines every time a Kentucky newspaper publishes one of his columns. Without the protection of this Court while the case proceeds, Plaintiff Rosemond will be not be able to continue publishing his widely syndicated newspaper column each week without risking crippling fines and even jail. That result would cause irreparable harm to Plaintiff Rosemond and deprive Kentuckians who value his insights from the benefit of his opinions.

Plaintiff Rosemond easily satisfies the familiar four-factor test for issuance of a temporary restraining order and preliminary injunction. *See United States v. Contents of Accounts*, 629 F.3d 601, 606 (6th Cir. 2011) (listing factors). As demonstrated in Section I below, Plaintiff Rosemond is likely to succeed on the merits because the Board's censorship of his weekly newspaper column is a content-based restriction on pure speech. As explained in

6

Section II below, the overwhelming constitutional interest in free speech and a free press is then dispositive of the remaining three factors because: (1) Censoring Plaintiff Rosemond's newspaper column will cause him irreparable harm; (2) neither the Board nor the public will be harmed by allowing Plaintiff Rosemond's advice column to continue running, just as it has run for the last 37 years; and (3) the public interest is always best served by prohibiting content-based censorship. Finally, Section III will explain why this Court should waive the bond requirement of Federal Rule of Civil Procedure 65(c).

I. **PLAINTIFF ROSEMOND IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE FIRST AMENDMENT PROHIBITS THE BOARD'S CENSORSHIP OF HIS ADVICE COLUMN AND HIS TRUTHFUL USE OF THE WORD "PSYCHOLOGIST."**

The first step in the temporary-restraining-order/preliminary-injunction analysis is establishing that Plaintiff Rosemond is likely to succeed on the merits. *Contents of Accounts*, 629 F.3d at 606. He does not have to prove that his victory is certain, only that there is a "substantial likelihood" that he will prevail. *See, e.g.*, *Miller v. City of Cincinnati*, 622 F.3d 524, 528 (6th Cir. 2010).

Plaintiff Rosemond is likely to succeed on the merits because the Board's content-based censorship of his speech is subject to strict scrutiny and there is no realistic possibility that the Board can satisfy this demanding standard. The Board censored two types of speech: Plaintiff Rosemond's individualized parenting advice to specific parents in his advice column and his truthful description of himself as a "psychologist." As explained below, both one-on-one advice and truthful statements about one's credentials are fully protected by the First Amendment. The Board lacks a compelling state interest in banning either Plaintiff Rosemond's version of Dear Abby or his truthful use of the word "psychologist." Further, banning Plaintiff Rosemond from

answering even a single question about parenting and banning him from making a 100-percent-true statement about himself are not narrowly tailored to any interest Defendants might assert.

### A.  The Board's Censorship of Plaintiff Rosemond's Advice Column Violates the First Amendment.

Plaintiff Rosemond is likely to succeed on the merits of his challenge to the Board's censorship of his advice column because his writing is pure speech, the Board's censorship of that speech is subject to strict scrutiny, and that censorship cannot survive strict scrutiny. The basic facts could not be simpler: Plaintiff Rosemond answered a *single* question from parents about their son, and he did so in the advice-column format that has been a staple of Anglo-American journalism for hundreds of years. Plaintiff Rosemond did not follow up with the parents, much less establish a formal clinical relationship. If the Constitution allows Kentucky to criminalize answering even a single question on parenting in the form of individualized advice, then practically every parent in Kentucky will be a criminal because almost every parent has at some point given specific parenting advice to someone.

This result flows directly from Kentucky's sweeping definition of the "practice of psychology," under which providing individualized advice in response to a single question on any topic that could be deemed "psychological" is enough to transform the speaker into a criminal. As Defendant Attorney General explained in his May 7, 2013 letter, Plaintiff Rosemond's individualized advice to specific parents about problems with their son was a "psychological service to the public." Ex. A, at 1-2 (quoting Ky. Rev. Stat. § 319.010(7)). But, as the following will show, the First Amendment does not allow Kentucky to transform a venerable form of speech such as parenting advice into the sole purview of its licensed psychologists.

8

### 1. Plaintiff Rosemond's parenting advice is speech protected by the First Amendment.

This is a free-speech case, and there can be no question that Plaintiff Rosemond's advice column is a form of speech protected by the First Amendment. In *Holder v. Humanitarian Law Project*, the U.S. Supreme Court held that individualized advice is protected speech entitled to the highest level of First Amendment protection. 130 S. Ct. 2705, 2724 (2010). In that case, a retired judge, a doctor, and several nonprofit groups wanted to provide individualized technical and legal advice to Sri Lankan and Kurdish terrorist groups on how to resolve their grievances non-violently. *Id.* at 2712-14. They challenged a federal statute that forbade providing "material assistance" to designated terrorist groups, a prohibition that encompassed the provision of "expert advice." *Id.* at 2713. The Supreme Court held that restrictions on advice constituted content-based restrictions on speech, not merely restrictions on conduct. *Id.* at 2723-24. *Holder* is dispositive: If individualized technical and legal advice to designated foreign terrorists is fully protected speech, then Plaintiff Rosemond's individualized parenting advice—such as "your son is in dire need of a major wake-up call"—must be protected speech too.

Plaintiff Rosemond's advice column is pure speech in a second sense. It is just an opinion expressed in black and white in the pages of a major newspaper. The U.S. Supreme Court has made indisputably clear that the expression of opinions in newspapers is also entitled to the highest level of First Amendment protection. *See, e.g.*, *Mills v. Alabama*, 384 U.S. 214 (1966).[2]

---

[2] *See also First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 781 (1978) ("The press cases emphasize the special and constitutionally recognized role of that institution in informing and educating the public, offering criticism, and providing a forum for discussion and debate."); *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972) ("Freedom of the press is a 'fundamental personal right'. . . ."); *New York Times Co. v. United States*, 403 U.S. 713, 717 (1971) ("In the First Amendment the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy."); *Lovell v. City of Griffin*, 303 U.S. 444, 450 (1938) ("Freedom of speech and freedom of the press . . . are among the fundamental personal rights and liberties . . . ."); *DeLisle v. Rivers*, 161 F.3d 370, 391 (6th Cir. 1998) ("'Without a free press there can be

Advice columns in particular are a venerable form of newspaper opinion. Abigail Van Buren, America's beloved Dear Abby, began her iconic column in 1956. Michael Martinez, *Pauline Phillips, Longtime Dear Abby Columnist, Dies at 94*, CNN (Mar. 7, 2013, 11:41 AM), http://www.cnn.com/2013/01/17/showbiz/dear-abby-pauline-phillips-obit (last visited July 15, 2013). In 1691, the English author John Dutton began publishing the *Athenian Mercury*, which contained the first Dear Abby-style advice column in which readers sought published responses to questions about their personal life issues. David Gudelunas, *Confidential to America: Newspaper Advice Columns and Sexual Education* 21-22 (2007). The first modern advice personality in America was "Dorothy Dix," the pseudonym for Elizabeth Meriwether Gilmer. *1896: Dorothy Dix's Advice Column Keeps New Orleans Reading*, The Times-Picayune (New Orleans), Sept. 30, 2011, *available at* http://www.nola.com/175years/index.ssf/2011/09/ 1896_dorothy_dixs_advice _colum.html. She began writing an advice column on marriage in 1896 in the *New Orleans Times-Picayune*. *Id.* By 1940, she was syndicated in more than 270 newspapers worldwide with an estimated personal readership of 60 million, making her the most read female writer of her era. Austin Peay State University, *Research Guide: The Dorothy Dix Special Collection* (2005), http://library.apsu.edu/dix/research/guide.htm (last visited July 15, 2013). Advice columns, like any other sort of opinion column, are a well-established form of speech, and thus they are protected by the Speech and Press Clauses of the First Amendment.

---

no free society.'" (quoting *Pennekamp v. Florida*, 328 U.S. 331, 354 (1946) (Frankfurter, J., concurring); *CBS, Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) ("It is axiomatic that the First Amendment guarantee of freedom of the press is for the benefit of all the people.").

## 2. The Board's content- and speaker-based censorship of Plaintiff Rosemond's speech is subject to strict scrutiny.

Not only is Plaintiff Rosemond's parenting advice fully protected by the First Amendment, but, as explained below, the Board has restricted that speech for two of the most highly disfavored reasons: because of its content and because of the identity of the speaker.

It is beyond dispute that the Board's censorship of Plaintiff Rosemond's advice is content-based. The Supreme Court has held that a regulation of speech is content-based whenever a speaker wishes to communicate with other people, and "whether they may do so . . . depends on what they say." *Humanitarian Law Project*, 130 S. Ct. at 2723-24. In this case, the Board determined that Plaintiff Rosemond's column was banned solely by reading the message that he conveyed. The Board banned Plaintiff Rosemond's column because he gave individualized advice to specific parents about their son. The Board would not have banned Plaintiff Rosemond's column if the content of his speech had been different, such as general opinions about parenting, rather than specific advice to particular readers about their own child. Nor would the Board have banned Plaintiff Rosemond's column if he had given advice on a subject that was not "psychological," such as camping or car repair. Thus, the Board's application of Kentucky's definition of the "practice of psychology" is content-based because Plaintiff Rosemond wants to communicate with readers via his newspaper column, and "whether [he may do so . . . depends on what [he] say[s]." *Id.*

The Board's censorship is content-based for the further reason that, logically, the Board must be concerned about the communicative *impact* of Plaintiff Rosemond's advice on his readers. There is no content-neutral reason—i.e., no reason unrelated to the ideas conveyed by Plaintiff Rosemond's column—for banning a newspaper advice column about parenting. Advice columns about parenting are not too loud, too bright, too distracting, or too likely to create litter.

11

*E.g.*, *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 298 (1984) (upholding prohibition on overnight camping in public park, without regard to whether campers were "demonstrators" or "nondemonstrators"); *Kovacs v. Cooper*, 336 U.S. 77 (1949) (upholding restrictions on sound trucks that made "loud and raucous noises," without regard to the content of any message conveyed, or whether a message was conveyed at all). Instead, the only plausible reason for the regulation of psychology, and the only reason why the statutory definition of the "practice of psychology" is so broad, is the government's fear of the *impact* of bad personal advice on "individuals, groups, organizations, [and] the public." Ky. Rev. Stat. § 319.010(7). Thus, the Board's censorship of Plaintiff Rosemond's column must be content-based because logically it "focuses *only* on the content of the speech and the direct impact that speech has on its listeners." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 811 (2000) (internal quotation marks omitted).

In addition to being content-based, the Board's censorship of Plaintiff Rosemond's advice column is also disfavored because it is *speaker-based*. In this case, Kentucky has singled out a class of speakers—those who are not Kentucky-licensed psychologists—and declared that those speakers may not give individualized advice on "psychological" subjects such as parenting, even if, as in this case, that speech occurs *outside* of a private, paid, clinical relationship. But, as the Supreme Court has noted, the First Amendment prohibits "restrictions distinguishing among different speakers, allowing speech by some but not others." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010). This not only harms speakers, it "deprive[s] the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration." *Id.* at 341.

12

### 3. The censorship of Plaintiff Rosemond's advice column cannot survive strict scrutiny.

Content- and speaker-based restrictions on pure speech are subject to strict scrutiny. *Playboy Entm't Grp.*, 529 U.S. at 813; *Citizens United*, 558 U.S. at 340-41.[3] Accordingly, the censorship of Plaintiff Rosemond's column is presumptively invalid and will survive only if the Board can establish that this censorship is narrowly tailored to advance a compelling government interest. *Playboy Entm't Grp.*, 529 U.S. at 813; *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) ("[T]he burdens at the preliminary injunction stage track the burdens at trial."). As explained below, the Board cannot meet this demanding standard.

### i. Kentucky has no compelling interest in censoring parenting advice in a newspaper.

To survive strict scrutiny, the Board would have to demonstrate that it has a compelling interest in suppressing individualized parenting advice in a garden-variety advice column. It is not enough for the Board to hypothesize an interest. The Board must adduce genuine evidence—not mere speculation or conjecture—to support its alleged interest. *Playboy Entm't Grp.*, 529 U.S. at 816-17; *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 392 (2000) ("We have never accepted mere conjecture as adequate to carry a First Amendment burden . . . ."); *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 475 (1995) ("[W]hen the Government defends a regulation on speech as a means to . . . prevent anticipated harms, it must do more than simply

---

[3] That Kentucky imposes a licensing requirement on Plaintiff Rosemond's speech, rather than banning it outright, does not lessen the applicable level of First Amendment scrutiny. As the Supreme Court recently reiterated in *Sorrell v. IMS Health, Inc.*, "the 'distinction between laws burdening and laws banning speech is but a matter of degree' and . . . the 'Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.'" 131 S. Ct. 2653, 2664 (2011) (quoting *Playboy Entm't Grp.*, 529 U.S. at 812). Further, the Court has rejected the notion that occupational licensure is "devoid of all First Amendment implication." *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 801 n.13 (1988).

'posit the existence of the disease sought to be cured.' . . . It must demonstrate that the recited harms are real, not merely conjectural . . . .").

The Board's burden is insurmountable. It is absurd to posit a compelling state interest in preventing advice columnists, family members, friends, neighbors, pastors, and even strangers on Internet forums from ever answering questions about parenting in the form of individualized advice. Discussions about how best to raise children are surely as old as speech itself. People constantly give parents advice on how to raise their children (as any parent can confirm). Plaintiff Rosemond has written his column for 37 years and it is syndicated in over 200 newspapers across the country. It is not remotely plausible that, sometime between Plaintiff Rosemond's February 12, 2013 column and the Board's May 7, 2013 letter, Kentucky discovered a compelling state interest in preventing him and everyone else from answering even one question about children in the form of individualized parenting advice.

To hold otherwise would be a drastic assault not only on speakers who offer such advice, but on parents who willingly seek it out. Parents are entitled to seek out information about how to raise their children. Indeed, doing so facilitates parents' exercise of their fundamental right, long recognized by the Supreme Court, to "direct the upbringing . . . of [their] children." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534 (1925). The government simply has no legitimate interest—let alone a compelling interest—in limiting the sources of information that they may consider. *See Citizens United v. FEC*, 558 U.S. at 356 ("When Government seeks to use its full power, including the criminal law, to command where a person may get his or her information or what distrusted source he or she may not hear, it uses censorship to control thought. This is unlawful. The First Amendment confirms the freedom to think for ourselves.").

14

> ii.    **Kentucky's censorship of Plaintiff Rosemond's speech is not narrowly tailored.**

In addition to being unsupported by any compelling government interest, the Board's censorship of Plaintiff Rosemond's advice column also fails the narrow-tailoring prong of strict scrutiny. Specifically, the Board's censorship is fatally underinclusive because "it discriminates against some speakers but not others without a legitimate 'neutral justification' for doing so." *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331, 345 (4th Cir. 2005) (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429-30 (1993)); *see also City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) ("[T]he notion that a regulation of speech may be impermissibly *underinclusive* is firmly grounded in basic First Amendment principles.").

In this case, there is no legitimate neutral justification for the fact that Kentucky prohibits Plaintiff Rosemond's parenting advice while leaving vast amounts of materially identical speech—in the form of newspapers, television shows, and Internet discussion forums—totally unregulated. Kentucky's newspapers and airwaves—not to mention the Internet—are filled with advice personalities answering questions on every facet of interpersonal relationships, most of which seemingly fall within the broad scope of Kentucky's definition of the "practice of psychology." *See* Verified Complaint ¶¶ 60, 72-74. The fact that the Board has targeted only Plaintiff Rosemond's speech, while leaving the rest of this advice totally untouched, is entirely arbitrary.

As the Supreme Court has recognized, "a law cannot be regarded as protecting an interest 'of the highest order' . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993) (citation omitted). Even if the Board had a compelling interest in regulating the advice that parents may consider in determining how best to raise their children—which it surely does not—

15

that supposed interest is fatally undermined by the fact that materially identical parenting advice is both ubiquitous and totally unregulated. Accordingly, the Board's censorship of Plaintiff Rosemond's parenting advice fails strict scrutiny.

### B. The Board's Censorship of Plaintiff Rosemond's Truthful Use of the Title "Psychologist" Violates the First Amendment.

Plaintiff Rosemond is also likely to succeed on the merits of his claim that the Board cannot prohibit him from using the word "psychologist" to describe himself. Under the First Amendment, the government has virtually no authority to ban true statements of fact. *See United States v. Alvarez*, 132 S. Ct. 2537, 2553 (2012) (Breyer, J, concurring) ("[T]rue statements . . . lie[] at the First Amendment's heart."). Plaintiff Rosemond *is* a psychologist. He has lawfully practiced family psychology for nearly four decades. And the First Amendment protects his right to tell people what he does for a living, whether in person or in the by-line of his newspaper column.

The U.S. Supreme Court has recognized that the First Amendment protects the truthful publication of one's actual credentials. In *Ibanez v. Florida Department of Business & Professional Regulation*, the Court held that a lawyer who was also a CPA and a certified financial planner could not be disciplined for mentioning these qualifications in her legal advertising. 512 U.S. 136, 143-49 (1994).

Plaintiff Rosemond's case is even stronger than *Ibanez*, however, because *Ibanez* dealt with commercial advertising, restrictions on which are subject to only intermediate scrutiny under the *Central Hudson* doctrine. *See id.* at 142-43. But Plaintiff Rosemond's description of himself as a family psychologist is not commercial speech, which the Supreme Court has defined variously as "speech which does 'no more than propose a commercial transaction,'" *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 772 n.24 (1976)

and as "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980). Plaintiff Rosemond's truthful description of himself as a family psychologist does not propose a commercial transaction, nor does it relate to the economic interests of his audience—simply put, he isn't selling his readers anything.[4] Instead, Plaintiff Rosemond's description of himself as a "family psychologist" is a component of his non-commercial newspaper column that provides additional relevant information to readers. And, as the Supreme Court has recognized repeatedly, a speaker's voluntary "'disclosure of truthful, relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information.'" *Ibanez*, 512 U.S. at 142 (quoting *Peel* v. *Attorney Registration and Disciplinary Comm'n of Ill.*, 496 U.S. 91, 108 (1990)).

The Board will likely argue in response that Plaintiff Rosemond's use of the term "family psychologist" is misleading because Plaintiff Rosemond is not a *Kentucky-licensed* psychologist. But this argument fails for multiple reasons. First, as a practical matter, no reasonable reader of Plaintiff Rosemond's column would necessarily infer that Plaintiff Rosemond is a Kentucky-licensed psychologist simply because his column runs in a Kentucky newspaper. No one watches Dr. Phil, Dr. Oz, or Dr. Ruth on television in Kentucky and assumes that they are Kentucky-licensed professionals. There is simply no reason to believe that Kentuckians assume that every

---

[4] The Board may argue that Plaintiff Rosemond's speech is commercial because he is compensated for writing his newspaper column, but this argument is incorrect. As this Circuit has recognized, "'[t]he fact that expressive materials are sold neither renders the speech unprotected, *nor alters the level of protection under the First Amendment*.'" *Parks v. LaFace Records*, 329 F.3d 437, 449 (6th Cir. 2003) (emphasis added) (quoting *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 970 (10th Cir. 1996)); *see also Argello v. City of Lincoln*, 143 F.3d 1152, 1153 (8th Cir. 1998) (rejecting argument that compensated fortune telling was commercial speech because "[t]he speech covered by the ordinance, for the most part, does not simply propose a commercial transaction. Rather, it *is* the transaction. The speech itself is what the 'client' is paying for.").

newspaper columnist or television personality with a professional license is licensed in Kentucky. *Cf. Ibanez*, 512 U.S. *at* 146 ("If the protections afforded commercial speech are to retain their force, we cannot allow rote invocation of the words 'potentially misleading' to supplant the Board's burden to demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." (internal quotation marks and citations omitted)).

Second, this argument is legally irrelevant to the merits of Plaintiff Rosemond's claims. To be sure, *commercial speech* that is misleading is not entitled to First Amendment protection. *See, e.g.*, *Central Hudson*, 447 U.S. at 563-64. But, as explained above, Plaintiff Rosemond's truthful description of himself as a family psychologist is not commercial speech; it is fully protected non-commercial speech. And, as fully protected non-commercial speech, Plaintiff Rosemond's speech would be protected even if it *were* misleading (which, again, it is not). *See Alvarez*, 132 S. Ct. 2537 (holding that the First Amendment protects outright lies about having received military honors, and applying strict scrutiny to invalidate the federal Stolen Valor Act).

Because Plaintiff Rosemond's description of himself as a family psychologist is fully protected by the First Amendment, the government may not regulate it unless those regulations satisfy strict scrutiny. For the same reasons the Board cannot satisfy strict scrutiny with regard to the other content of Plaintiff Rosemond's column, *supra* 13-16, it cannot satisfy strict scrutiny with regard to this. Simply put, the government has no compelling interest to justify the censorship of the truthful, non-commercial use of one's professional credentials, and there is no neutral justification for restricting Plaintiff Rosemond's use of the title "psychologist" while imposing no similar restriction on Dr. Phil McGraw or any of the countless other psychologists whose opinions are available in newspapers, books, or on the Internet to readers in Kentucky.

* * *

Because the Board cannot demonstrate that its censorship of Plaintiff Rosemond's parenting advice or his truthful use of the title "psychologist" satisfies strict scrutiny, Plaintiff Rosemond has demonstrated that he is likely to succeed on the merits of his First Amendment claims.

## II. PLAINTIFF ROSEMOND SATISFIES THE REMAINING REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION.

Having demonstrated that Plaintiff Rosemond is likely to succeed on the merits of his First Amendment claims, the remaining temporary-restraining-order/preliminary-injunction factors—whether Plaintiff Rosemond stands to suffer irreparable harm and whether an injunction would harm others or the public interest—may be easily disposed of. In cases where First Amendment rights are at stake, these factors "are essentially encompassed by the analysis of the movant's likelihood of success on the merits." *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 698 F.3d 885, 890 (6th Cir. 2012); *see also Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) ("'[I]n [a First Amendment] case, the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute.'").

The likelihood that Plaintiff Rosemond will succeed on the merits necessarily means that he stands to suffer irreparable harm; as this Circuit has recognized, "'even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.'" *United Food & Commercial Workers Union, Local 1099 v. S.W. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 363 (6th Cir. 1998) (citation omitted). Further, neither a temporary restraining order nor a preliminary injunction poses any risk to Defendants, but would instead "merely mandate that appropriate individuals cease enforcing certain challenged provisions of

19

the law until such time as a federal court may rule, after a full hearing, on the merits of the plaintiff['s] constitutional challenges." *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995). Plaintiff Rosemond has published his column in the United States for 37 years and in Kentucky for over two decades. No harm will come to anyone from maintaining that status quo during the pendency of this case. Finally, both a temporary restraining order and a preliminary injunction are in the public interest because "the public as a whole has a significant interest in ensuring . . . protection of First Amendment liberties." *Id.*; *see also G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

### III.   THIS COURT SHOULD WAIVE THE BOND REQUIREMENT OF RULE 65(C) BECAUSE THIS IS A FIRST AMENDMENT CASE WITH NO MONEY AT STAKE.

Federal Rule of Civil Procedure 65(c) provides that a temporary restraining order or preliminary injunction may be issued only if the applicant gives security in an amount determined by the court. But "the rule in [the Sixth Circuit] has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). Courts in this circuit have specifically found it appropriate to waive the bond requirement in cases that "involve[] a constitutional issue affecting the public." *Stand Up Am. Now v. City of Dearborn*, No. 12-11471, 2012 U.S. Dist. LEXIS 48478, at *10 (E.D. Mich. Apr. 5, 2012); *see also City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981) (noting that "[a]n area in which the courts have recognized an exception to the Rule 65 security requirement" is when plaintiffs are "engaged in public-interest litigation").

This case falls squarely into this exception to the bond requirement. Neither a temporary restraining order nor a preliminary injunction poses any financial risk to the Board, which will simply be enjoined from taking legal action against Plaintiff Rosemond while this Court determines the merits of Plaintiff Rosemond's First Amendment claims. Accordingly, Plaintiff respectfully request that this Court waive the bond requirement or, alternatively, set bond in the nominal amount of one dollar.

### Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this court issue an immediate temporary restraining order enjoining Defendants and their agents from enforcing Kentucky's Psychology Practice Act against Plaintiff Rosemond based on the content of his newspaper column until such time as this Court can consider Plaintiff's motion for preliminary injunction. Plaintiff further requests that this Court grant Plaintiff's motion for preliminary injunction to ensure that Plaintiff is permitted to continue speaking during the pendency of this litigation. Finally, Plaintiff requests that this Court waive the Rule 65(c) bond requirement for both the temporary restraining order and the preliminary injunction.

Dated: July 16, 2013

Respectfully Submitted,

INSTITUTE FOR JUSTICE
Jeff Rowes*
Paul Sherman*
901 North Glebe Road, Suite 900
Arlington, VA 22203-1854
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: jrowes@ij.org; psherman@ij.org

* Motions for admission *pro hac vice* pending

*Attorneys for Plaintiff*

21

/s/ Richard A. Brueggemann
Richard A. Brueggemann (90619)
HEMMER DEFRANK PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 578-3855
Fax: (859) 578-3869
rbrueggemann@hemmerlaw.com

*Local Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of July, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION** was dispatched to a third-party process server for service to the following Defendants:

Jack Conway
Attorney General of Kentucky
Office of the Attorney General
Capitol Suite 118
700 Capitol Avenue
Frankfort, Kentucky 40601-3449

Eva Markham
Chair of the Kentucky Board of Examiners of Psychology
Office of the Attorney General
Capitol Building, Suite 118
700 Capital Avenue
Frankfort, KY 40601

Owen T. Nichols
Vice Chair of the Kentucky Board of Examiners of Psychology
Office of the Attorney General
Capitol Building, Suite 118
700 Capital Avenue
Frankfort, KY 40601

Thomas W. Miller
Member of the Kentucky Board of Examiners of Psychology
Office of the Attorney General
Capitol Building, Suite 118
700 Capital Avenue
Frankfort, KY 40601

Melissa F. Hall
Member of the Kentucky Board of Examiners of Psychology
Office of the Attorney General
Capitol Building, Suite 118
700 Capital Avenue
Frankfort, KY 40601

Sally L. Brenzel
Member of the Kentucky Board of Examiners of Psychology
Office of the Attorney General
Capitol Building, Suite 118

700 Capital Avenue
Frankfort, KY 40601

William G. Elder Jr.
Member of the Kentucky Board of Examiners of Psychology
Office of the Attorney General
Capitol Building, Suite 118
700 Capital Avenue
Frankfort, KY 40601

Stanley A. Bittman
Member of the Kentucky Board of Examiners of Psychology
Office of the Attorney General
Capitol Building, Suite 118
700 Capital Avenue
Frankfort, KY 40601

Paula Glasford
Member of the Kentucky Board of Examiners of Psychology
Office of the Attorney General
Capitol Building, Suite 118
700 Capital Avenue
Frankfort, KY 40601

/s/ Richard A. Brueggemann
Richard A. Brueggemann (90619)
HEMMER DEFRANK PLLC
250 Grandview Drive, Suite 500
Ft. Mitchell, Kentucky 41017
Phone: (859) 578-3855
Fax: (859) 578-3869
rbrueggemann@hemmerlaw.com

*Local Counsel for Plaintiff*

24